UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIZABETH A. MATTHEWS** and **MEGHAN McGAHAN**, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **EXPERIAN INFORMATION SOLUTIONS, INC.**, <br><br> *Defendant*. | Case No. 2:21-cv-01089-MSG <br><br> **Jury Trial Demanded** |

# FIRST AMENDED CLASS ACTION COMPLAINT

## I.     PRELIMINARY STATEMENT

1.     This is a consumer class action brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, seeking relief for Defendant's widespread violations thereof.

2.     Defendant Experian Information Solutions, Inc. systemically violates FCRA section 1681g(a) by failing, upon request, to provide to consumers such as Plaintiffs complete disclosures of all information it maintains in its files about them, as required by the FCRA.

3.     Specifically, Experian does not disclose to consumers certain rental history that it sells about them and that it maintains in its files, and in certain cases does not provide or disclose to consumers their FCRA files in any form or condition at all, instead misdirecting them to a related business's website which provides something else entirely, and in a deceptive way attempts to bind consumers to forced individual arbitration.

## II.     JURISDICTION AND VENUE

4.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

5.     Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

6. Plaintiff Elizabeth A. Matthews ("Matthews") is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, Matthews was a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

7. Plaintiff Meghan McGahan ("McGahan") is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, McGahan was a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

8. Defendant Experian Information Solutions, Inc. is a foreign business entity that regularly conducts business in the Commonwealth of Pennsylvania.

9. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meaning of 15 U.S.C. §§ 1681a(b), (f).

## IV. FACTUAL ALLEGATIONS

**A. Defendant's Acquisition And Use Of Rental History Information For Tenant Screening Consumer Reports**

10. Defendant is one of the "Big Three" nationwide consumer reporting agencies ("CRAs") in the United States and prepares and sells consumer reports about millions of consumers per year containing information about credit accounts, employment history, public record information, and more.

11. In addition to traditional credit data, Defendant also acquires rental history information pertaining to consumers for purposes of creating and selling tenant screening reports about those consumers to landlords, rental property managers, and other CRAs under the brand "Experian RentBureau."

12. The Experian RentBureau-branded tenant screening reports that Defendant prepares and sells about thousands of consumers each year are "consumer reports" within the

meaning of section 1681a(d) of the FCRA because they are used and expected to be used for multiple purposes governed by section 1681b of the FCRA, and the rental history information included within the reports bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of the subjects of the reports.

13. Defendant operates its consumer reporting business, including the sales of tenant screening reports under the Experian RentBureau brand, as a single, unified CRA, with integrated operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts.

B. **Defendant's Failure To Fully Disclose Certain Information To Consumers**

14. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

15. In furtherance of that goal, the FCRA mandates that CRAs provide consumers with access to all of the information sold about them to third parties. *See* 15 U.S.C. § 168lg(a).

16. The FCRA requires CRAs to provide consumers with copies of their complete consumer files without charge every twelve months, after a credit denial and in other limited circumstances. *See* 15 U.S.C. § 168lj.

17. When used in connection with information on any consumer, the FCRA uses the term "file" to mean "all of the information on that consumer recorded and retained by a consumer reporting agency *regardless of how the information is stored*." 15 U.S.C. § 168la(g) (emphasis added).

18. "File . . . denotes all information . . . that *might* be furnished, or *has been* furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)) (emphasis added).

19. Commonly, FCRA "files" are called "credit reports."

20. CRAs may not attempt to circumvent their duties to disclose imposed by the FCRA by way of corporate or technological chicanery. 15 U.S.C. § 1681x; *see also Cortez*, 617 F.3d at 711 ("We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report."); *McIntyre v. Trans Union LLC*, 2020 WL 1150443, * 3 (E.D. Pa. March 5, 2020) (same).

21. Examples of such prohibited attempts include:

*Circumvention through reorganization by data type.* XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603(p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

\* \* \*

*Circumvention by a newly formed entity.* Smith Co. is a new entrant in the marketplace for consumer reports that bear on a consumer's credit worthiness, standing and capacity. Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide. Neither Smith Co. nor its affiliated organizations comply with FCRA obligations of consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Smith Co.'s conduct is a circumvention

>or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

12 C.F.R. parts 1022.140(b)(1), (3).

22. Defendant fails, as a matter of common policy and procedure, to provide consumers who request their FCRA file disclosures from Defendant with all rental history the information Defendant maintains about them.

23. Specifically, Defendant uniformly omits rental history information that it gathers and regularly sells under the Experian RentBureau brand from the file disclosures it provides to consumers. This omission is not a mistake or oversight, but is pursuant to Defendant's intentionally adopted policies and practices.

24. Defendant's practices not only violate the FCRA as a matter of law, but they exact serious consequences on individual rental housing applicants and interstate commerce as a whole, depriving consumers of the ability to obtain what rental history information that Defendant maintains and sells about them to third parties.

**C.     Defendant Denies Consumers Their FCRA-Mandated File Disclosures**

25. FCRA section 1681j(a) provides consumers the right to receive a free copy of their credit file once a year.

26. Any "request" by a consumer is sufficient to trigger the obligation for a credit "file" under FCRA section 1681g(a), and Defendant routinely accepts telephone, written and Internet requests for consumers' files.

**The Experience of Plaintiff Elizabeth A. Matthews**

27. In 2014, Plaintiff successfully resolved a mistaken $6,107 rent claim against her from her landlord in Boston, Massachusetts. The resolution resulted in no balance due from Matthews.

28.     In February 2020, Matthews applied to rent an apartment in Philadelphia, Pennsylvania.

29.     The rental agent ordered a tenant screening consumer report ("Screening Report") concerning Matthews from RentGrow, Inc., a tenant screening CRA.

30.     The Screening Report concerning Matthews stated that it was "Powered by Experian RentBureau."

31.     The Screening Report reflected searches requested and completed on February 28, 2020.

32.     The Screening Report inaccurately included rental history information, in the form of a "Collection Alert" regarding Matthews, namely an open collection account in the amount of $6,107.00 in favor of NCC Business Services.

33.     The rental history information on the Screening Report was in Defendant's possession and was provided to RentGrow, Inc. by Defendant.

34.     This rental history information was inaccurate and Defendant knew it, because Matthews had years earlier sued and settled with Defendant about the same error appearing on her Experian credit report.

35.     As a result of the inaccurate report, Matthews' lease application in Philadelphia was rejected.

36.     The landlord sent Matthews a letter dated February 28, 2020 which stated that the rejection was based on information in the Screening Report.

37.     As a result of the inaccurate Screening Report and the adverse action taken in reliance thereon by the landlord, Matthews was forced to seek alternative housing, for which she was required to pay a higher monthly rent.

38. Defendant knew or should have known that the NCC account should not have been included in the Screening Report and Defendant had not include the NCC account in a file disclosure it provided to Matthews on or about May 25, 2016 after her first lawsuit against Defendant.

39. As a CRA, Defendant must, upon a consumer's request, disclose to the consumer "all information in the consumer's file at the time of the request[.]" 15 U.S.C. § 1681g(a). This includes the identification of each person who procured a consumer report in the prior year. 15 U.S.C. § 1681g(a)(3).

40. Following the adverse action taken against her as a result of the Screening Report, Matthews went to Defendant's website, intending to request that Defendant produce all information in her consumer file.

41. Rental history information and alleged defaults in rent payment are included in the meaning of "information in [a] consumer's file." 15 U.S.C. § 1681g(a)(1). *McIntyre*, 2020 WL 1150443 at *4, citing *Cortez*, 617 F.3d at 711.

42. On or about February 29, 2020, Matthews visited Defendant's website, www.experian.com, to determine whether the inaccurate NSC collection information was still a part of her file at Experian.

43. On Defendant's website, Matthews clicked on a link that represented that she could acquire her "free credit report," which she understood to be her Experian file.

44. "Credit report" is the term known by consumers and the term commonly used by consumers and by Plaintiffs here to request their FCRA "files."

45. Indeed, Experian uses the terms "credit report" on its website and in various other documents when referring to the FCRA "file" disclosures that it sends to consumers to their homes or email addresses upon request.

46. Experian offers no separate website or method for consumers to request their FCRA "files" and does not differentiate "files" from "credit reports" in its communications to consumers who seek to request their FCRA "files."

47. Thus, when consumers request their "credit reports" from Defendant, Defendant understands that to be a request for the "file" as defined by the FCRA.

48. Unbeknownst to Matthews, Defendant's website, www.experian.com, appears to allow a consumer to request his/her FCRA file, but actually redirects consumers, and redirected her, to another website, www.usa.experian.com, which solicited her email address and a password for the creation of an account for services provided by a related business, Experian Consumer Services, LLC ("ECS").

49. ECS is not a defendant in this matter, is not a CRA, is not Experian, and does not and cannot provide to Matthews her Experian FCRA file.

50. Indeed, according to Experian, ECS did not provide Matthews with a copy of her Experian credit file per her request. Instead, ECS provided Matthews with a "credit monitoring report." ECF 8-3 at ¶ 6.

51. Defendant did not provide Matthews with any file disclosure of her Experian credit file per her request. ECF 8-2 at ¶ 6.

52. The ECS credit monitoring report stated that Matthews's credit score was 803, which it described as "exceptional."

53. The ECS credit monitoring report contained no reference to the NCC collection account information that, upon information and belief, Defendant continued to maintain in its files about her and had recently sold about her in connection with the Screening Report. Indeed, Defendant's disclosure through ECS directly contradicted its Screening Report and affirmatively stated that Matthews had "No collection accounts."

54. Additionally, the ECS credit monitoring report did not disclose each person to whom Defendant had provided a consumer report about Matthews in the prior year.

55. Thereafter, Matthews brought the instant lawsuit, alleging that Defendant's failure to include the rental history information regarding the NCC account was pursuant to its standard policy and procedure of omitting data it collects for the purposes of including on Experian RentBureau branded reports from file disclosures to consumers.

56. Shortly after Matthews filed suit, Defendant moved to compel arbitration, arguing that Matthews' creation of an account with ECS and use of ECS's "Services" included an agreement to resolve any disputes between Matthews and *Defendant* concerning the ECS "Services" through binding arbitration.

57. The ECS Terms of Use Agreement defines "Service" as follows:

> The term "Service" includes, but is not limited to, the provision of any of our products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying you of changes to the information contained in your credit report(s), regardless of the manner in which you receive the Services, whether by email or mail, through a website or mobile application, by telephone, or through any other mechanism by which a Service is delivered or provided to you.

ECF 8-5 at 2 (January 2, 2020 version); *see also* ECF 8-7 at 2 (August 13, 2020 version).

58. Under the heading "FCRA DISCLOSURES," the same ECS Terms of Use Agreement states, in relevant part, as follows:

> ***The credit report you are requesting from ECS is not intended to constitute the disclosure of Experian Credit Bureau information required by the FCRA*** or similar state laws. Experian Credit Bureau's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by ECS. This disclosure report must be obtained directly from Experian Credit Bureau by going to www.experian.com/dispute, or by calling 888- EXPERIAN.
>
> The FCRA allows consumers to get one free comprehensive disclosure of all of the information in their credit file from each of the three national credit reporting companies (Experian Credit Bureau, Equifax®, and TransUnion®) once every 12 months through a central source. Georgia residents can receive two disclosures per year. Although comprehensive, ***the credit reports from each of the three national credit reporting companies that are available from ECS may not have the same information as a credit report obtained directly from the three national credit reporting companies or through the central source.*** To request your free annual report under the FCRA, you must go to www.annualcreditreport.com, or call 877-322-8228. ***ECS's Services are not related to the free FCRA disclosure that you are or may be entitled to.***

ECF 8-5 at 5 (January 2, 2020 version); *see also* ECF 8-7 at 10-11 (August 13, 2020 version) (emphasis added to both versions).

59. The incomplete ECS disclosure denied Matthews the opportunity to learn the extent and source of the rental history information Defendant maintained, had provided, and would provide to third parties about her, despite Congress's clear mandate in sections 1681g(a)(1) and (3) of the FCRA and its implementing regulations.

60. On or about May 26, 2021, Matthews requested a full file disclosure of her Experian credit file from the website www.annualcreditreport.com.

61. That same day, Defendant provided a file disclosure that, as before, did not include any information concerning the NSC collection account or any information Defendant had previously provided to RentGrow under the name "Experian RentBureau."

**The Experience of Plaintiff Meghan McGahan**

62. On or about May 26, 2021, Plaintiff McGahan wanted to check her Experian credit "file," commonly called a credit report, to verify whether Defendant had removed an account that she had disputed in the past.

63. McGahan thus went to Defendant's website, www.experian.com, and clicked on a button below the message, "Get your Free Credit Report and FICO Score" in order to request a copy of her FCRA "file."

64. Indeed, Defendant prominently displays language about getting a free credit report and FICO score banner on its website, www.experian.com, and appears to have no other easily identifiable method for consumers to request their FCRA files.

65. To her surprise, upon her request for her FCRA "file" from Defendant's website, www.experian.com, McGahan was redirected to a different website, www.usa.experian.com, and presented with a form soliciting her name and mailing address under the heading "Tell Us About Yourself."

66. Lower on the same page, under the heading "Create an Account," were fields for an email address and password.

67. Below those fields, the following message appeared: "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy."

68. At the bottom of her screen was a large button with the words, "Create Your Account" written on it. McGahan never clicked on this button.

69. Confused and frustrated, McGahan was not provided and did not receive a copy of her FCRA "file" or anything at all from Experian upon her request. Rather she was re-directed to another website that offered other "Services" that McGahan did not request or seek.

70. At all times pertinent hereto and with respect to all of the foregoing allegations, Defendant's conduct was a result of deliberate policies and practices, was willful, was carried out in reckless disregard for consumers' rights as set forth under section 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V. CLASS ACTION ALLEGATIONS

71. Plaintiffs bring this action on behalf of the following Classes for Defendant's violations of FCRA section 1681g(a):

### *Incomplete Disclosure Class*

For the period beginning five (5) years prior to the filing of this action and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendant Experian has a record of transmitting a file disclosure in response to the person's request, which file disclosure did not include any rental history information that Experian RentBureau had in its possession, sold about the person, or would have sold about the person.

### *Nondisclosure Class*

For the period beginning two (2) years prior to the filing of this action and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who visited Defendant's website, www.experian.com, and clicked on a link that included "get free credit report and FICO score" or that redirected the person to usa.experian.com and for whom Defendant has no record of providing an FCRA file disclosure within 5 days thereof.

72. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiffs aver upon information and belief that the members of the Class number in the thousands. Defendant sells rental history information to thousands of businesses throughout the country, and

its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, thousands of consumers visit www.experian.com seeking to obtain their FCRA files every month. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question concerns whether Defendant violated the FCRA by failing to provide all the information it maintains about consumers upon their request.

73. Plaintiffs' claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

74. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs are committed to vigorously litigating this matter and have retained counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this claim.

75. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

76. Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records.

77. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant' records.

## VI. CLAIMS FOR RELIEF

### COUNT I
### Violation of 15 U.S.C. § 1681g(a)
### (On behalf of Plaintiff Matthews and the Incomplete Disclosure Class)

78. Plaintiff Matthews incorporates the foregoing paragraphs as though the same were set forth at length herein.

79. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to Plaintiff Matthews and members of the Incomplete Disclosure Class for negligently and willfully failing to provide a complete copy of all the information in their files upon request, in violation of FCRA section 1681g(a). Specifically, Defendant did not disclose to Plaintiff Matthews and members of the Incomplete Disclosure Class upon their request the rental history information it maintains and sells about them to potential landlords and other users of Defendant's products and services.

### COUNT II
### Violation of 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (On behalf of Plaintiff Matthews and the Incomplete Disclosure Class)

80. Plaintiff Matthews incorporates the foregoing paragraphs as though the same were set forth at length herein.

81. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff Matthews and members of the Incomplete Disclosure Class for negligently and willfully failing to identify each person that procured a consumer report about them during the one-year

period preceding the date of the request, in violation of section 1681g(a)(3)(A)(ii) of the FCRA. Specifically, Defendant failed to disclose to Plaintiff Matthews and members of the Incomplete Disclosure Class upon their request the identity of the end-user of the reports which included rental history it prepared about Plaintiff and members of the Class.

## COUNT III
## Violation of 15 U.S.C. § 1681e(b)
## (On behalf of Plaintiff Matthews individually)

82. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to Plaintiff Mathews for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b) of the FCRA. Specifically, Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the rental history information it reported about Plaintiff Matthews, thereby publishing inaccurate and outdated rental history information to her potential landlord and causing her harm.

## COUNT IV
## Violation of 15 U.S.C. § 1681g(a)
## (On behalf of Plaintiff McGahan and the Nondisclosure Class)

84. Plaintiff McGahan incorporates the foregoing paragraphs as though the same were set forth at length herein.

85. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to Plaintiff McGahan and members of the Nondisclosure Class for negligently and willfully failing to provide a complete copy of all the information in their files upon request, in violation of FCRA section 1681g(a). Specifically, Defendant did not disclose to Plaintiff McGahan and members of the

Nondisclosure Class any of the information in their files upon request for free copies of their credit reports through www.experian.com.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs prays this Honorable Court enter an order granting the following relief:

A. Certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiffs and their counsel to represent the Classes;

B. declaring that Defendant's conduct as alleged is in violation of the FCRA;

C. awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D. awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

E. awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F. awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

G. granting such other and further relief as may be just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby request a trial by jury.

Dated: June 11, 2021	Respectfully submitted,

ELIZABETH A. MATTHEWS and
MEGHAN McGAHAN, *by their attorneys,*

*/s/John Soumilas*
James A. Francis
John Soumilas
Lauren KW Brennan
Jordan M. Sartell (admitted *pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 980-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
jsartell@consumerlawfirm.com